**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| LORI SANFRATELLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 2:09-CV-162 |
| ) | |
| HOWELL TRACTOR AND ) | |
| EQUIPMENT, LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant's Motion for Summary Judgment, filed on January 28, 2011; and (2) Motion to Strike Newly Raised Argument, or, in the Alternative, for Leave to File Surreply, filed by Plaintiff, Lori Sanfratello, on March 25, 2011. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion to strike is **DENIED** and request for leave to file surreply is **GRANTED**. Accordingly, the clerk is **ORDERED** to dismiss this case.

BACKGROUND

Plaintiff, Lori Sanfratello ("Sanfratello"), filed suit in state court against her former employer, Defendant, Howell Tractor and Equipment, LLC ("Howell"), alleging she was not paid for the hours of overtime she worked, in violation of the Fair Labor

-1-

Standards Act, 29 U.S.C. section 201, et seq. Subsequently, this case was removed here.

Howell filed a motion for summary judgment, arguing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Howell argues that Sanfratello occupied an expempt administrative position that was not entitled to overtime pay. After the summary judgment briefing concluded, Plaintiff filed a motion to strike arguments that Howell raised in its reply brief or, alternatively, to be permitted to file a surreply to address those newly raised issues.

DISCUSSION

Motion for Summary Judgment

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*,

840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

Howell is in the business of selling, leasing, repairing and maintaining heavy operating equipment. (Ellis Aff, ¶¶ 2-3). Thomas Ellis ("Ellis") is Howell's General Manager and Gary Hammond ("Hammond") is Howell's General Service Manager. (Ellis Aff. ¶ 1; Hammond Aff. ¶ 1). Hammond has oversight responsibility for the branch Service Managers and the day -to-day operations of the service departments at each of Howell's locations. (Hammond Aff. ¶ 2). Hammond reports directly to Ellis. (Hammond Aff. ¶ 2). Sanfratello was employed with Howell at its Gary, Indiana, facility from approximately February 13, 2006, until February 20, 2009, when she was laid off from Howell due to economic conditions. (Sanfratello Dep. pp. 49, 131).

While employed with Howell, Sanfratello worked at the Gary, Indiana, facility. (Hammond. Aff. ¶ 5). Tim Lucas ("Lucas") was the branch Service Manager in the Gary facility and reported to Hammond. (Hammond. Aff. ¶ 5). Lucas ran the day-to-day operations of the Gary service department and was responsible for processing

warranty claims. (Hammond. Aff. ¶ 5). T.J. Mihal ("Mihal") was the Assistant Service Manager and he reported directly to Lucas. (Hammond. Aff. ¶ 5). Barbara Smith ("Smith") was also employed as a Service Administrator. Smith's job responsibilities were mostly clerical in the Service Department. (Hammond. Aff. ¶ 5).

Ellis, Hammond, Mihal, Rogers and Sanfratello were all paid on a salary basis. (Ellis Aff. ¶ 12). Their salaries did not fluctuate and were not subject to deductions for partial day absences. (Ellis Aff. ¶ 12). Smith and the Service Technicians, who performed repairs and maintenance work, were paid on an hourly basis. (Ellis Aff. ¶ 12).

In late 2005, Ellis felt that Howell's warranty claims were not being handled efficiently. (Ellis Aff. ¶ 7). In addition, Howell's service department was very busy handling numerous daily service calls. (Ellis Aff. ¶ 7). To address these two issues, Ellis and Hammond decided to transfer Lucas to a sales position and promote Mihal to branch Service Manager. (Ellis Aff. ¶ 8). Ellis and Hammond decided to fill the Assistant Service Manager position with a new hire, who would also be responsible for processing warranty claims. (Ellis Aff. ¶ 8). Mihal suggested Sanfratello for the new "Assistant Service Manager/Warranty Administrator" position because he knew that she had been around heavy machinery her whole life and also because she had experience working with computers and spreadsheets, which would be useful in processing

warranty claims. (Mihal Aff. ¶ 4). Following an interview, Sanfratello was hired by Howell on or about February 13, 2006. (Sanfratello Dep. Tr. p. 49; Hammond Aff. ¶ 5).

Sanfratello was hired to fill the role of Assistant Service Manager/Warranty Administrator after Lucas was transferred and Mihal assumed the role of branch Service Manager. (Hammond Aff. ¶ 6). Sanfratello was to assist Mihal by taking service calls, helping with putting quotes together and also taking care of the warranty claims. (Hammond Dep. pp. 30-31). When Sanfratello was hired, she was hired to assist Mihal and take care of the warranty claims; not to do his clerical work. (Hammond Dep. p. 5).

The service aspect of the Assistant Service Manager/Warranty Administrator position involves processing and coordinating service calls. Typically, a service call is initiated by a telephone call to Howell from a customer that has concerns about its machine. (Hammond Aff. ¶ 9; Mihal Aff. ¶¶ 9-10; Rodgers Aff. ¶¶ 9-10). According to Howell, it is the Assistant Service Manager's responsibility to answer the service call and the branch Service Manager and General Service Manager will take the calls if the Assistant Service Manager is unavailable. (Hammond Aff. ¶ 9; Mihal Aff. ¶ 6; Rodgers Aff. ¶¶ 9-10). However, Sanfratello testified that most customers she spoke with wanted to speak with Mihal, and she would take a message for Mihal to return the customers' call. (Sanfratello Dep. pp. 100-101).

Aside from giving messages to Mihal, Sanfratello took down customer information from work orders. (Sanfratello Dep. pp. 101-103). Regarding these work orders, Howell claims that the Assistant Service Manager is to determine the scope of the work required and then prepare an estimate or quote detailing the amount of time that it will take to complete the project and the cost of labor and parts. (Hammond Aff. ¶ 10; Mihal Aff. ¶ 7; Rodgers Aff. ¶ 10). When Sanfratello would answer a call for service, she would write down what type of machine was in need of repair, write down the customer's phone number, and then look at a list of mechanics to see who as trained on that type of machine and who was available to make a preliminary dispatch assignment. (Sanfratello Dep. p. 102-03, 107, 110, 112).

The estimate or quote for work to be performed is contained in a document entitled "Service Estimate." In the Service Estimate, the Assistant Service Manager is to break down the project by specific task and assign an estimated time that it will take to complete each task. The information is logged into a spreadsheet format by which the Assistant Manager can monitor and measure the progress of the project against the previously provided estimate. (Hammond Aff. ¶ 11; Mihal Aff. ¶ 9; Rodgers Aff. ¶ 12). However, it was not Sanfratello's responsibility to determine whether the measuring the progress of the project against the estimate demonstrated that "it was a good job or a bad job." (Hammond Dep.

p. 60).

The Assistant Service Manager does not need a supervisor's approval to provide any specific estimates; however, the branch Service Manager and General Service Manager are often consulted when the project exceeds $20,000 in labor costs. (Hammond Aff. ¶ 12; Mihal Aff. ¶ 10; Rodgers Aff. ¶ 13). Sanfratello could get involved in the discussion regarding putting a quote together, but Hammond does not remember her ever doing so. (Hammond Dep. pp. 61-62). After an estimate is prepared, the next step in the process is to assign the right Service Technician to the project so that the necessary work can be performed. (Hammond Aff. ¶ 13; Mihal Aff. ¶ 11; Rodgers Aff. ¶ 14).

Selecting the right Service Technician requires taking a number of factors into consideration because not all technicians are capable of working on all types of equipment. The Assistant Service Manager must confirm the Service Technician is trained and certified to perform the repairs or maintenance sought by the customer. (Hammond Aff. ¶ 14; Mihal Aff. ¶ 12; Rodgers Aff. ¶ 15). Sanfratello could do this by looking at a list she was given, which provided which mechanics were trained or certified on particular equipment. (Sanfratello Dep. p. 110). The Assistant Service Manager had the discretion to select the Service Technician best suited for the particular service call. (Hammond Aff. ¶ 18; Mihal Aff. ¶ 14; Rodgers Aff. ¶ 17). However, often times, Mihal would

change Sanfratello's initial assignments.  (Sanfratello Dep. p. 115-119).

After the Service Technician is assigned and the project commences, it is the Assistant Service Manager's job responsibility to keep track of the project on a form known as the "Tracking Sheet."  This form is used to log the progress made on the on the project and to compare the actual labor costs with the projected costs.  (Hammond Aff. 19; Mihal Aff. ¶ 15; Rodgers Aff. ¶ 18).  The Assistant Service Manager works closely with Service Technicians to keep the project on track and on budget.  (Hammond Aff. 20; Mihal Aff. ¶ 16; Rodgers Aff. ¶ 19).  If there is a significant disparity between the actual labor costs and the estimated labor costs, it is up to the Assistant Service Manager to attempt to bring the project in line with the estimate or to communicate the problem with the customer.  The Assistant Service Manager has discretion on how to proceed.  (Hammond Aff. 21; Mihal Aff. ¶ 17; Rodgers Aff. ¶ 20). In addition, the Assistant Service Manager serves as the continuing point of contact with the customer throughout the repair or maintenance project and, sometimes, is the sole point of contact between Howell and the customer.   (Hammond Aff. 22; Mihal Aff. ¶ 18; Rodgers Aff. ¶ 21).  However, Sanfratello did not have the authority to unilaterally settle warranty disputes, reduce a part's price with a customer, or unilaterally negotiate any quoted amount or billing issues or disputes with customers.  (Hammond Dep. pp.

77-80, 95-97).

The Assistant Service Manager is also responsible for dispatching Service Technicians for emergency calls that arise on the weekend and, if required, preparing an estimate of the cost of the project. (Hammond Aff. 23; Mihal Aff. ¶ 19; Rodgers Aff. ¶ 22). Sanfratello asserts that she applied the same instructions that she followed in weekday dispatching. (Sanfratello Dep. pp. 137-38, 142).

The Assistant Service Manager/Warranty Administrator is also responsible determining if a warranty applies to a particular work order. This is done by going on a manufacturer's web site and inputting information from the warranty. (Sanfratello Dep. p. 61). If work was covered by a warranty, Sanfratello would fill out a form, which included giving the manufacturer all of the necessary information so that Howell will be reimbursed for doing the warranty work. (Ellis Dep. p. 33; Sanfratello Dep. pp. 61-62). The necessary information was either given to Sanfratello by the mechanics or was on the invoices. (Sanfratello Dep. p. 62). If there is warranty coverage, the necessary warranty forms have to be filled out and submitted upon completion of the project. (Hammond Aff. ¶ 24; Rodgers Aff. ¶ 5). Each manufacturer has its own methodology for submitting claims and the Assistant Service Manager/ Warranty Administrator is responsible for knowing and complying with each manufacturer's process. (Hammond Aff. ¶ 26;

Rodgers Aff. ¶ 6).

In the event that Howell believes that its warranty claims have been wrongly denied, the Warranty Administrator is required to engage in negotiations with the manufacturer. (Hammond Aff. ¶ 28). However, Sanfratello did not have the authority to settle warranty disputes with the manufacturer. (Hammond. Dep. p. 97).

When Sanfratello was hired by Howell, her regular hours of employment were from 6 a.m. to 4 p.m. She was initially paid a salary of $40,000 per year. Her pay did not fluctuate and was not subject to deductions for either partial day absences or for disciplinary reasons. (Sanfratello Dep. pp. 143-44). When Howell hired Sanfratello, it was anticipated that she would assume Lucas' former job responsibilities of processing warranty claims and also assist Mihal in running and coordinating the day-to-day operations of the Gary Service Department, including assisting with coordinating weekend service work. (Hammond Aff. ¶ 30; Mihal Aff. ¶ 5; Rodgers Aff. ¶ 8; Sanfratello Dep. p. 138).

Sanfratello's predecessor kept track of warranties in a handwritten list. Sanfratello used that handwritten list as a template to create a warranty spreadsheet. She plugged the relevant data into a spreadsheet. (Sanfratello Dep. pp. 82-83). At the suggestion of Eliis and fellow employee Bill Caruso, Sanfratello added column headings and a Miscellaneous Warranty Log page. (Sanfratello Dep. pp. 86, 95-96). Sanfratello also had a

column for "comments," where she would input the manufacturer's response information onto the warranty spreadsheet so that "everybody saw what was going on." (Sanfratello Dep. p. 85). Sanfratello updated this log whenever there was a development with the warranty claim.

Sanfratello performed job responsibilities related to the warranty work until approximately September 2, 2008. Sanfratello complained that she was overwhelmed with service department work and could not handle the responsibilities of both Warranty Administrator and Assistant Service Manager. (Ellis Aff. ¶ 11; Hammond Aff. ¶ 32). As a result, Howell hired Terri Rodgers to assume the position of Warranty Administrator and Sanfratello was directed to focus on the service department work; Rodgers and Sanfratello continued to function in dual roles until February 2009. (Hammond Aff. ¶ 33; Rodgers Aff. ¶ 8).

Due to a reduction in business, it no longer made sense for Howell to have a separate Warranty Administrator and a separate Assistant Service Manager. (Ellis Aff. ¶ 14). Ellis and Hammond felt that Rodgers was a more valuable employee to Howell because Rodgers was capable of doing both the warranty work and the service department work. As a result, the decision was made to retain Rodgers and to lay-off Sanfratello. (Ellis Aff. ¶ 14; Hammond Aff. ¶ 34). Sanfratello's last day of employment was on or about February 20, 2009. (Hammond Aff. ¶ 35).

Sanfratello has filed the instant suit, seeking overtime pay pursuant to the Fair Labor Standards Act. Howell asserts that Sanfratello is not entitled to overtime pay because her position was an exempt administrative position.

Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires employers to pay overtime wages to employees. 29 U.S.C. § 207(a)(1). However, employees that work in "a bona fide executive, administrative or professional capacity" are exempt from the overtime requirements. 29 U.S.C. § 213(a)(1).

Howell argues that Sanfratello was exempt from the overtime requirements of the FLSA because she was an exempt administrative employee. In order to fit within the administrative exemption, an employee must: (1) be compensated on a salary or fee basis at a rate of not less than $455 per week; (2) have as a primary duty of performance of office or non-manual work directly related to the management or general business operations of the employer's customers; and (3) have a primary duty that requires the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. 541.200.

Satisfying the first prong, the parties agree that Sanfratello was paid on a salary basis and earned more than $455 per week. (Def. Mem. p. 5; Pl. Resp. p. 13-14).

-13-

Next, Howell must show that Sanfratello's "primary duty must be the performance of work directly related to the management or general business operations of" Howell. 29 C.F.R. § 541.201. To meet this requirement, Sanfratello "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. 541.201(a). "Exempt administrative work includes duties such as 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. Much of this work, but not all, will relate directly to management policies." *Schaefer-LaRose v. Eli Lilly and Co.*, 663 F.Supp.2d 674, 689 (S.D. Ind. 2009)(quotation omitted).

Sanfratello argues that she was not involved in the general business operations of Howell because, at best, she transferred some information from the work orders to the invoices. However, despite Sanfratello's arguments, this Court finds that the record establishes that the Assistant Service Manager/ Warranty Administrator position's primary duty included work directly related to the general business operations of Howell. Howell deals with heavy operating equipment and provides repair and maintenance services on that type of equipment. Sanfratello was not responsible for actually performing any repair or maintenance

service. Instead, in her role as Assistant Service Manager, Sanfratello was responsible for assisting with the management and administration of the repair and maintenance services. Sanfratello developed quotes for customers, tracked the progress of projects, and assigned service technicians. In her role as Warranty Administrator, Sanfratello was to determine if a particular repair or piece of equipment was under warranty and assist in resolving warranty disputes. Clearly, the Assistant Service Manager/ Warranty Administrator position directly dealt with Howell's general business regarding its service and warranty operations.

The third prong requires Howell to show that Sanfratello is performing work that requires "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). The phrase "exercise of discretion and independent judgment" involves "the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202.

Determining whether an employee has the authority to exercise discretion and independent judgment is to be based "in light of all the facts involved in the particular employment situation." 29 C.F.R. § 541.202(b). Factors to be considered in making this determination include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; *whether the employee investigates and resolves matters of significance on behalf of management;* and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

Sanfratello argues that she did not exercise discretion or independent judgment. In fact, she claims that she did little more than transfer data and follow rote instructions. However, despite the fact that Sanfratello claims to have merely performed rote, ministerial tasks, the undisputed facts establish that the primary duties for the position in which she was hired gave her authority to exercise discretion and independent judgment.

The Assistant Service Manager/Warranty Administrator was to perform work that affected Howell's business operations to a substantial degree. The service of heavy equipment and warranty repairs was a considerable part of Howell's business. The Assistant Service Manager/Warranty Administrator had the responsibility of

handling service calls, assisting with putting repair quotes together, tracking the progress of service orders, and taking care of warranty claims. These duties involved much more than just fact gathering or applying well-established procedures. The Assistant Service Manager/Warranty Administrator had to communicate with clients, evaluate each service call, prepare quotes and estimates and process any warranty claims. These duties involved decision making.

Sanfratello also had the authority to commit Howell in matters that had significant financial impact. Sanfratello was to determine the nature of the customer's problem, decide upon a course of action to correct that problem, had to prepare a quote to estimate how much it would cost to fix the problem and had to assign service technicians who could fix the problem. These decisions were important as Howell was - for the most part - bound to follow the quotes given by Sanfratello.

In addition, the fact that Sanfratello was in a position to recommend disciplinary action against service technicians further shows her authority to exercise discretion and independent judgment. 29 C.F.R. § 541.202(c). Just because some of Sanfratello's decisions were subject to her supervisor's approval, does not change the fact that her position gave her discretion and independent judgment. 29 C.F.R. § 541.202(c).

Motion to Strike/Leave to File Surreply

Sanfratello believes that Howell inappropriately raised a new issue in its reply brief; namely, the argument that the position of Assistant Service Manager/Warranty Administrator included the exercise of discretion and independent judgment of an exempt administrative employee, but that Sanfratello did not perform her job adequately. As such, Sanfratello asks this Court to strike that argument. It is true that new arguments cannot be raised in a reply brief. See *Mitello, Central States, Southeast and Southwest Areas Pension*, 360 F.3d 681, 690 n.10 (7th Cir. 2004). However, Howell's reply brief does not inappropriately raise new arguments. Instead, the complained of argument contained in Howell's reply brief is nothing more than a counter to the arguments raised in Sanfratello's response brief.

In the alternative, Sanfratello seeks leave to file a surreply brief, which she attached to her motion. This Court will permit the filing of the surreply and has considered it in ruling on the instant motion for summary judgment.

CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion to strike is **DENIED** and request for leave to file surreply is **GRANTED**. Accordingly, the clerk is **ORDERED** to dismiss this case.

DATED: July 20, 2011　　　　　　　　　/s/RUDY LOZANO, Judge
　　　　　　　　　　　　　　　　　　　　United States District Court